IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **THOMAS W. GAUGHEN**, | : CIVIL ACTION NO. 1:09-CV-2488 |
| Plaintiff | : (Judge Conner) |
| v. | : |
| **UNITED STATES OF AMERICA**, | : |
| Defendant | : |

## MEMORANDUM

This is a tax refund action filed by plaintiff Thomas W. Gaughen ("Gaughen") against the United States of America ("United States"). Presently before the court is a motion (Doc. 47) for partial summary judgment filed by Gaughen. Gaughen moves for summary judgment on Count IV (fraud) of his complaint (Doc. 1), wherein he seeks a refund of the fraud penalty assessed against him. For the reasons that follow, the court will deny the motion.

**I.    Factual Background and Procedural History**

   **A.    Factual Background**[1]

On or about October 17, 2005, Gaughen, as taxpayer and donor, timely filed a Form 709 United States Gift Tax Return (the "return") for the year ending December 31, 2004. (Doc. 48 ¶ 1; Doc. 50-2 ¶ 1). The return listed gifts of Gaughen's ownership interests in seven parcels of real property and the fair market value of

---

[1] In accordance with the standard of review for a motion for summary judgment, the court will present the facts in the light most favorable to the United States, the nonmoving party. See infra Part II.

each parcel on the dates of gifts. (Doc. 1 ¶ 5; Doc. 51 ¶ 3). The United States disputes the fair market values of three of the gifted parcels: (1) a 135.59 acre parcel of real property located in Silver Spring Township, Pennsylvania ("Henlor");[2] (2) a 62.96 acre parcel of real property located in Silver Spring Township, Pennsylvania ("Millbrooke");[3] and (3) a 6.67 acre parcel of real property located in Hampden Township, Pennsylvania ("Crossgate")[4] (collectively the "properties"). (Doc. 48 ¶¶ 6-8; Doc. 50-2 ¶¶ 6-8).

Gaughen listed the following fair market values for the disputed properties as of the dates of the gifts on the return: (1) Henlor - $549,000; (2) Millbrooke - $233,000; and (3) Crossgate - $75,000. (Doc. 1 ¶ 21; Doc. 38 ¶ 21). Gaughen based the fair market values of the properties primarily on the restricted use appraisal reports[5] of Mr. Larry E. Foote, a Certified General Appraiser ("Foote"). (Doc. 48 ¶ 9; Doc. 50-2 ¶ 9; Doc. 51 ¶ 6). The Internal Revenue Service ("IRS") challenged the fair market values of the properties listed by Gaughen on the return. (Doc. 1 ¶ 5; Doc. 38 ¶ 5). The IRS appraised the fair market values of the properties as follows: (1) Henlor - $3,550,000; (2) Millbrooke - $1,075,000; (3) and Crossgate - $1,105,000.

---

[2] Gaughen donated a fifty percent interest in Henlor on January 27, 2004. (Doc. 48 ¶ 18).

[3] Gaughen donated a twenty-five percent interest in Millbrooke on September 30, 2004. (Doc. 48, Ex. F; Doc. 49, at 10 n.9).

[4] Gaughen donated a twenty-five percent interest in Crossgate on September 30, 2004. (Doc. 48 ¶ 20).

[5] A restricted use appraisal report is typically a less detailed form of appraisal report. (Doc. 50, Ex. C, at 37).

(Doc. 1 ¶ 21; Doc. 38 ¶ 21). Consequently, the IRS alleged that Gaughen undervalued the properties by a total of $4,873,000. (Id.) Gaughen received a Notice of Deficiency dated October 3, 2008, and a Notice of Tax Due dated January 29, 2009, from the IRS assessing him an additional gift tax of $1,055,228.78, a fraud penalty of $791,429.59 pursuant to 26 U.S.C. § 6663(a), and compound interest of $493,676.67. (Doc. 48 ¶ 2; Doc. 50-2 ¶ 2). Gaughen paid the taxes, penalties, and interest assessed by the IRS, totaling $2,340,327.04. (Doc. 48 ¶ 3; Doc. 50-2 ¶ 3).

### B.     Procedural History

Gaughen filed the instant action on December 16, 2009, seeking a tax refund of $2,340,327.04 plus interests and costs. (Doc. 1). On June 21, 2010, Gaughen moved for judgment on pleadings for Count IV (fraud) of his complaint. (Doc. 12). The court held that the United States's answer failed to comply with the requirements of Federal Rule of Civil Procedure 9(b), but granted the United States leave to amend its pleading. (See Doc. 35). On February 16, 2011, the United States filed an amended answer (Doc. 38), asserting fraud under Section 6663 of the Internal Revenue Code as an affirmative defense. On April 1, 2011, Gaughen moved for partial summary judgment on Count IV of his complaint. (Doc. 47). The parties have fully briefed the issues, and the matter is now ripe for disposition.

## II.     Standard of Review

Through summary adjudication the court may dispose of those claims that do not present a "genuine issue as to any material fact" and for which a jury trial would be an empty and unnecessary formality. See FED. R. CIV. P. 56(a). Once the

moving party demonstrates that there are no genuine issues of material fact, the burden shifts to the non-moving party to come forth with "affirmative evidence, beyond the allegations of the pleadings," in support of its right to relief. Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The evidence must be adequate, as a matter of law, to sustain a judgment in favor of the non-moving party on the claims. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-57 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-89 (1986); see also FED. R. CIV. P. 56(a). Only if this threshold is met may the cause of action proceed. Pappas, 331 F. Supp. 2d at 315.

## III. Discussion

Section 6663 of the Internal Revenue Code provides:

> **(a) Imposition of penalty.**--If any part of any underpayment of tax required to be shown on a return is due to fraud, there shall be added to the tax an amount equal to 75 percent of the portion of the underpayment which is attributable to fraud.
>
> **(b) Determination of portion attributable to fraud.**--If the Secretary establishes that any portion of an underpayment is attributable to fraud, the entire underpayment shall be treated as attributable to fraud, except with respect to any portion of the underpayment which the taxpayer establishes (by a preponderance of the evidence) is not attributable to fraud.

26 U.S.C. § 6663(a)-(b). The United States has the burden to prove by clear and convincing evidence that the taxpayer intentionally underpaid his or her taxes with "a specific purpose to evade a tax known or believed to be owing." Raley v. Comm'r, 676 F.2d 980, 981 (3d Cir. 1982) (citation and quotations omitted). The

United States can satisfy this burden by demonstrating that (1) an underpayment occurred, and (2) at least part of the underpayment can be attributed to fraud. Marretta v. Comm'r, 168 F. App'x 528, 530 (3d Cir. 2006) (citing Morse v. Comm'r, 419 F.3d 829, 832 (8th Cir. 2005); Sadler v. Comm'r, 113 T.C. 99, 102 (1999)).

### A.  Whether Underpayment Occurred

The Internal Revenue Code provides that "[i]f the gift is made in property, the value thereof at the date of the gift shall be considered the amount of the gift." 26 U.S.C. § 2512(a).  The value of property is its fair market value which is defined as "the price at which such property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or to sell, and both having reasonable knowledge of relevant facts."  26 C.F.R. § 25.2512–1.

The parties dispute the fair market value of the properties on the date of the gifts.  The United States's trial expert, John J. Coyle 3rd, MAI, CRE ("Coyle"), appraises the fair market values of the properties as of the dates of the gifts as follows: (1) Henlor - $1,800,000; (2) Millbrooke - $1,075,000; (3) Crossgate - $670,000. (See Doc. 50-8, Exs. 271, 276, 281).  Coyle avers that Gaughen undervalued the fair market values of the properties by a total of $2,688,000 on the return.  (Id.) Gaughen sharply disputes Coyle's findings.  Gaughen's trial expert submits the following fair market values of the properties: (1) Henlor - $452,700; (2) Millbrooke - $242,900; (3) Crossgate - $155,000.  (Doc. 52, at 5).  Gaughen calculated his gift tax liability based on the fair market values of the properties on the dates of the gifts,

and, therefore, a genuine issue of material fact exists regarding whether he paid his gift tax liability in full.

### B. Whether Part of the Underpayment Can be Attributed to Fraud

Gaughen concedes that the parties dispute the fair market value of the properties, but contends that the United States has presented insufficient evidence to demonstrate that the alleged underpayment is attributable to fraud. (See Doc. 49, at 4-18; Doc. 52, at 2-15). The determination of whether an alleged underpayment can be attributed to fraud rests with the trier of fact. See Marretta, 168 F. App'x at 531. Fraud can be proven by both direct and circumstantial evidence. Id. (stating that "[f]raudulent intent is rarely established by direct evidence"); see also Kosinski v. Comm'r, 541 F.3d 671, 679 (6th Cir. 2008) (noting that direct proof of fraud is rarely available).

As a threshold matter, I note that "[i]ssues such as intent . . . are rarely suitable for summary judgment." Wishkin v. Potter, 476 F.3d 180, 184 (3d Cir. 2007); Ness v. Marshall, 660 F.2d 517, 519 (3d Cir. 1981). Determining an individual's state of mind is the traditional province of the jury because it requires credibility determinations and factual inferences as to which reasonable minds often differ. See Watts v. Univ. of Delaware, 622 F.2d 47, 52 (3d Cir. 1980). The issue *sub judice* is whether the United States has presented sufficient evidence to demonstrate a factual dispute regarding Gaughen's state of mind when he filed the return. The United States must prove by clear and convincing evidence that Gaughen

6

intentionally underpaid his gift tax with the specific intent to evade a tax known or believed to be owing.

The court finds that three pieces of circumstantial evidence proffered by the United States are sufficient to demonstrate a genuine issue of material fact on Gaughen's state of mind when filing the return: (1) the alleged undervaluation of the properties; (2) Cumberland County tax assessments from July 2004; and (3) contracts for the sale of the properties negotiated by Gaughen prior to filing the return. The court also finds that Gaughen's alleged reliance on Foote's restricted use appraisal reports is insufficient to foreclose the United State's fraud defense.

### 1. **Alleged Undervaluations of the Properties**

Understating tax liability on a tax return is circumstantial evidence of fraud. see Marretta, 168 F. App'x at 531; see also Schwarzkopf v. Comm'r, 246 F.2d 731, 734 (3d Cir. 1957). In the instant case, the United States asserts that Gaughen understated his gift tax liability by undervaluing the properties by a total of $2,688,000 on the return. Although Gaughen disputes that he undervalued the properties, for purposes of summary judgment, the "non-movant's allegations must be taken as true and, when these assertions conflict with those of the movant, the former must receive the benefit of the doubt." Gans v. Mundy, 762 F.2d 338, 340 (3d Cir. 1985) (citation omitted). A reasonable jury could conclude that the only plausible explanation for such a large discrepancy between the fair market values of the properties listed by Gaughen on the return and the actual fair market values of the properties on the dates of the gifts is fraud.

Gaughen makes two objections to the use of the alleged undervaluation as evidence of fraud. (Doc. 49, at 4-8). First, Gaughen argues that courts have rejected the application of a fraud penalty based solely upon the alleged undervaluation of real-estate or overvaluation of tax deductions. See Estate of Spruill v. Comm'r, 88 T.C. 1197, 1242-48 (1987). However, the United States proffers more than Gaughen's alleged undervaluation of the properties as evidence of fraud. (Doc. 50, at 14). Specifically, the United States presented Cumberland County tax assessment from July 2004 and contracts for the sale of the properties negotiated by Gaughen as circumstantial evidence of fraud. See infra Section III.B.2 and Section III.B.3.

Second, Gaughen argues that reasonable minds may, quite properly, disagree on the question of valuation given the element of subjectivity which necessarily arises in every appraisal. See Frazee, 98 T.C. at 557; Spruill, 88 T.C. at 1243. Gaughen notes that the four experts in this case have all reached different determinations of the fair market values of the properties. (Doc. 52, at 4). Gaughen also emphasizes the large discrepancy between the fair market values listed by the IRS on the Notice of Deficiency and the fair market values of the properties according to Coyle. (Doc. 52, at 5). These arguments impact the weight of the evidence, but do not preclude the use of undervaluation as evidence of fraud. Gaughen will have ample opportunity to forcefully present these arguments to the jurors at trial. When viewed in the light most favorable to the United States, the

court finds that a reasonable jury could attribute the alleged undervaluation of the properties by $2,688,000 to fraud.

### 2. Cumberland County Tax Assessments

The United States asserts that Cumberland County, Pennsylvania ("Cumberland County") tax assessments provide circumstantial evidence of Gaughen's fraudulent intent. (Doc. 50, at 21-23). Cumberland County mailed tax assessments to Gaughen in July 2004 which listed the fair market values of the properties as follows: (1) Henlor - $697,430; (2) Millbrooke - $326,550; and (3) Crossgate - $501,750. (Doc. 51 ¶¶ 12, 14, 15). Gaughen initially appealed these tax assessments, but later withdrew his appeals for Henlor and Millbrooke. (Doc. 51 ¶¶ 12, 14). Cumberland County agreed to reduce its assessment for Crossgate to $350,000 after reviewing Gaughen's appeal. (Id. ¶ 15). In total, Cumberland County assessed the fair market value for the properties at $1,373,980, $516,980 more than the fair market values listed by Gaughen on the return. The court finds that a reasonable jury could infer that the Cumberland County tax assessments demonstrate that Gaughen knew the properties were worth more than the fair market values he listed on the return, and that he specifically intended to evade gift tax liability.

Gaughen objects to the United State's use of the Cumberland County tax assessments as evidence of fraud. Gaughen argues that it is improper to consider local tax assessments in estimating the fair market values of the properties for gift tax purposes. (Doc. 49, at 14). Gaughen's argument sweeps too broadly as the

9

authority cited by Gaughen merely requires evidence that the municipality intended its tax assessments to reflect the fair market value of the property. In Frazee v. Commissioner, the tax court rejected evidence of a tax assessment because nothing in the record demonstrated that the assessed value reflected in the assessment represented the fair market value of the property. See 98 T.C. 554, 553 (1992). Similarly, the Internal Revenue Service regulation governing the valuation of property prescribes that "[p]roperty shall not be returned at the value at which it is assessed for local tax purposes *unless* that value represents the fair market value thereof on the date of the gift." C.F.R. § 25.2512 (emphasis added)). It is undisputed that Cumberland County intended its tax assessments to reflect the fair market value of the properties as of January 1, 2004. See CUMBERLAND COUNTY 2010 REASSESSMENT GUIDE, at 5 (revised 1/22/2010), *available at* http://www.ccpa.net/DocumentView.aspx?DID=6110.

Next, Gaughen contends that the Cumberland County tax assessments cannot be used as evidence of fraud because they did not take effect until 2005, after he gifted the properties. (Doc. 52, at 12-13). The effective date of the tax assessments is irrelevant because the tax assessments reflected the fair market values of the properties as of January 1, 2004, which was *prior* to the valuation dates of the properties (the dates of the gifts). It is the province of the jury to assess the credibility of Gaughen's explanation for the values he listed on the return for the properties, which were significantly less than the tax assessments. When viewed in the light most favorable to the United States, the jury could tenably deem

10

Gaughen's withdrawal of his appeals for Henlor and Millbrooke as a tacit admission that the assessments accurately reflected the fair market value of the properties as of January 1, 2004.

Finally, Gaughen asserts that the Cumberland County tax assessments cannot prove fraud because they are closer to the fair market values on Gaughen's return than to Coyle's valuations. (Doc. 52, at 13). This argument impacts only the weight of the evidence. The United States need not establish that the Cumberland County tax assessments represent the *best* indication of fair market values of the properties to prove fraud. Rather, the United States may simply use the tax assessments, in conjunction with other evidence, to establish Gaughen's (alleged) intent to ignore credible evidence in conflict with predetermined, lower valuations of the properties.[6] Suffice it to say, fraud is one plausible inference from Gaughen's alleged conduct.

### 3. Contracts for the Sale of the Properties

The United States contends that contracts for the sale of the properties—negotiated by Gaughen prior to filing the return—also demonstrate Gaughen's fraudulent intent. (Doc. 50, at 18-20; Doc. 51 ¶¶ 9, 13, 16). Gaughen negotiated a sales contract with Toll Brothers, Inc. to sell Henlor for over $5,000,000 on May 24, 2004. (Doc. 51 ¶¶ 8-11). Thereafter, Gaughen filed his return and listed Henlor's fair

---

[6] The United States cannot simultaneously advance at trial that the tax assessments have *no* reasonable connection the fair market values of the properties and that the tax assessments demonstrate circumstantial evidence of fraudulent intent. It is not fraud to ignore irrelevant considerations.

market value as only $549,000 as of January 24, 2004. (Doc. 48 ¶¶ 1, 11). Similarly, Gaughen negotiated an option agreement on May 21, 2004, to sell Millbrooke to Toll Brothers, Inc. for $2,001,000, but listed on the return that Millbrooke was worth only $233,000 as of September 2004. (Id.; Doc. 51¶ 13). The court finds that a reasonable jury could infer that Gaughen specifically intended to evade gift tax liability from the roughly ten-fold disparity between Gaughen's negotiated agreements and the fair market values listed on the gift tax return.

Gaughen argues that he negotiated these agreements after the valuation dates for Henlor and Millbrooke. (Doc. 49, at 9-13). The general rule is that events occurring after the valuation date "are not considered in determining fair market value, except to the extent that such events were reasonably foreseeable on the valuation date." Spruill, 88 T.C. at 1228 (citing cases). Nonetheless, "the price set by a freely negotiated agreement made reasonably close to the valuation date is persuasive evidence of the fair market value of the property on the valuation date . . . except where a material change in circumstances occurs between the valuation date . . . and the date of sale which renders the subsequent sale unforeseeable." Id. at 1233 (citations omitted); see also First Nat. Bank of Kenosha v. United States, 763 F.2d 891, 894 (7th Cir. 1985).

The contracts for Henlor and Millbrooke are relevant under this framework. Gaughen entered into the option contract for Millbrooke on May 21, 2004, *prior* to gifting the property in September 2004. (Doc. 48, Ex. F; Doc. 51¶ 13). Gaughen negotiated the sales contract for Henlor on May 24, 2004, only four months after

12

gifting the property on January 24, 2004. (Doc. 48 ¶ 18; Doc. 51 ¶¶ 8-11). At this juncture, there is no record evidence that any material changes occurred to Henlor during this time period which would impact its fair market value. That the sales for Henlor and Millbrooke never closed impacts only the weight of the evidence.[7] See First Nat. Bank of Kenosha, 763 F.2d at 895 (finding that the jury could consider an option agreement entered into after the valuation date as evidence of the fair market value of the property).

More importantly, the question of fraud cannot be entirely conflated with the dispute concerning the actual fair market values of the properties. In the instant action, the relevant inquiry is whether Gaughen knew he was undervaluing the properties on the return. Raley, 676 F.2d at 981 (emphasizing that the government must show the taxpayer acted with specific intent evade a tax "known or believed to be owing"). Clearly, the agreements of sale do not have to represent the *best* evidence of the fair market values of the properties. As stated previously, the United States may use the sale contracts, in conjunction with the tax assessments, to establish a pattern of Gaughen intentionally ignoring credible evidence of higher

---

[7] Whether the sale of Crossgate for $1,673,975 is relevant is a more difficult question. (Doc. 51, ¶ 16). The Crossgate sale occurred almost two years after the valuation date and Gaughen has proffered evidence that the Crossgate sale involved unique circumstances that were not foreseeable on the valuation date. (Doc. 48, Ex. 0, at 348-49 (noting that the sale involved an adjoining owner who believed he was getting a casino)). Given that the United States only has to demonstrate that part of the underpayment can be attributed, to fraud, see 26 U.S.C. § 6663(b), and may be able to demonstrate fraud relating to the alleged underevaluation of Crossgate with other evidence, we defer this issue to another day.

fair market values of the properties. A jury could find any proffered explanation for ignoring this evidence incredible and infer that Gaughen knew the properties had higher fair market values than the figures he listed on the return.

Gaughen also argues that the sale agreements are irrelevant because they were not considered by Coyle. (Doc. 49, at 12). According to his own report, Coyle did not rely on the sale agreements for three reasons: (1) the agreements contained various unfulfilled conditions; (2) the developer planned to develop Henlor and Millbrooke in conjunction with an adjacent property; and (3) the closing dates could be delayed by 40 months with only minimal penalty. (See, e.g., Doc. 48, Ex. H, at B-11). Coyle's statements do not foreclose a finding of fraudulent intent. A jury could reasonably infer that, even if the various contingencies and conditions significantly inflated the sales prices for Henlor and Millbrooke in the agreements, Gaughen knew that Henlor and Millbrooke were worth substantially more than one-tenth of the agreed-upon purchase prices on the applicable valuation dates. Gaughen may certainly address how the various conditions and contingencies in the agreements affected the purchase prices through cross-examination of Coyle and by presenting his own evidence on the issue.

### 4. **Reliance on Foote's Appraisal Reports**

Gaughen argues that he cannot be found liable for fraud because he relied in good-faith on the appraisal reports prepared by Foote. (Doc. 49, at 3-4). Gaughen asserts that the United States' fraud defense is foreclosed by Coyle finding Foote's appraisal reports to be "credible," "appropriate" and "not misleading" and

14

attributed Foote's lower market values to his utilization of different comparable sales in his reports. (See Doc. 48, Exs. E-G). However, the United States employed Coyle to evaluate the propriety of Foote's methods in preparing the appraisal reports, not Gaughen's state of mind when relying on the reports. In light of other evidence presented by the United States, the court concludes that Coyle's findings do not prevent a jury determination of fraud.

Reliance on a valuation by an expert is not an "ironclad defense in tax fraud cases." Estate of Trompeter v. Comm'r, 279 F.3d 767, 774 (9th Cir. 2002). The taxpayer must exercise "due care in obtaining an appraisal of fair market value." Id. A sophisticated taxpayer cannot blindly accept an expert's conclusions if those conclusions have been contradicted by other evidence. Id.

The record demonstrates that Gaughen instructed Foote on how to value the properties. (Doc. 50, at 17). For example, Gaughen wrote in a letter to Foote that with respect to Crossgate, "I need a restricted appraisal report very close to $65,000 supporting my conveyance."[8] (Doc. 50, Ex. 132 (emphasis in original); see also Doc. 50, Exs. 134-35). Foote's appraisal reports were remarkably consistent with Gaughen's instructions. (Doc. 51 ¶ 22). The most glaring illustration is Foote appraising Crossgate at $75,000 in his appraisal report despite previously valuing

---

[8] Gaughen provided Foote with similar instructions for Henlor and Millbrooke. (Doc. 50, Ex. 134 ("I could live with $ 550,000 report value on 1/27/2004.")

Crossgate at $350,000 only a few months before.[9] (Doc. 50, Exs. 131-32). Although Gaughen contends that the letters simply reflect the transmission of his own expert opinion to Foote, nothing forecloses a jury from concluding that Gaughen intended to influence Foote's appraisal process and that Foote was not retained to provide a completely impartial appraisal exclusive of Gaughen's suggestive instructions. Taxpayers cannot blindly rely on valuations where the purpose of the appraisal is simply to reduce tax liability.

A reasonable jury could also conclude that Gaughen withheld material information from Foote. A taxpayer must make "complete disclosure of all the relevant facts" to rely in good-faith on the expert advice of a third party. McGraw v. Comm'r, 384 F.3d 965, 973 (8th Cir. 2004). Specifically, the record shows that Gaughen never informed Foote about the sale/option agreements for Henlor and Millbrooke. (Doc. 51 ¶¶ 25; Doc. 48, Ex. F at J-6). Foote testified that it "would have been nice to know" about these agreements. (Doc. 50, Ex. C. at 127). Gaughen argues that these sales agreements were immaterial because the Uniform Standards of Professional Appraisal Practice ("USPAP"), to which both Foote and Coyle adhered, limit consideration of sales to three years prior to the effective date of the appraisal. The USPAP mandates, however, that the appraiser "analyze all agreements of sale, options, and listings of the subject property current as of the

---

[9] Gaughen contends that this large reduction can be explained by additional information he provided to Foote after Foote's initial appraisal of Crossgate. (Doc. 52, at 9). Again, it is the province of the jury to evaluate the veracity of Gaughen's proffered explanation.

effective date of the appraisal." (Doc. 48, Ex. M). Gaughen negotiated the Millbrooke option agreement on May 21, 2004, *prior* to the effective date of the appraisal (September 30, 2004). Therefore, at minimum, the Millbrooke option agreement was material information that Gaughen failed to disclose to Foote. In addition, Gaughen also failed to inform Foote that his restricted use appraisal reports would be shared with a third party, the IRS.[10] (Doc. 50, Ex. A, at 90).

Finally, a reasonable jury could determine that Gaughen should not have adopted Foote's appraisals in light of the sale agreements and Cumberland County tax assessments. See Trompeter, 279 F.3d at 774. Gaughen is a sophisticated taxpayer with more than thirty-one years of experience in real estate. (Doc. 51 ¶ 7). Gaughen argues that his personal knowledge regarding the properties and his thirty-one years of real-estate experience allowed him scrutinize and to assess the accuracy of Foote's appraisal reports. As noted previously, the veracity of Gaughen's proffered explanation is a credibility question for the jury. Accordingly, a genuine issue of material fact exists regarding whether Gaughen relied on Foote's appraisal reports in good-faith.

## IV. Conclusion

To be forthright, the clear and convincing evidence is a demanding standard proof and a jury may be unable conclude that Gaughen undervalued the properties on his return with "a specific purpose to evade a tax known or believed

---

[10] Restricted appraisal reports are prepared only for the particular client and are not meant to be disseminated to third parties. (Doc. 68, Ex. A, at 168).

to be owing." See Raley, 676 F.2d at 981.  Nonetheless, it is improper for the court to weigh the evidence at the summary judgment stage and the court simply cannot conclude that *no reasonable jury* could find fraud based on the totality of the evidence presented to the court.[11]  As explained above, the court must view all facts and draw all reasonable inferences in favor of the United States, the non-moving party.  Therefore, the court must presume that Gaughen undervalued the properties by $2,688,000 on the return.  This undervaluation, in conjunction with the Cumberland County tax assessments and negotiated agreements for Henlor and Millbrooke, is sufficient to demonstrate a genuine issue of material fact.  In addition, Gaughen's purported reliance on Foote's appraisal reports cannot foreclose the United State's fraud claim in light of Gaughen's instructions to Foote and his failure to disclose all material information.  Accordingly, the court will deny Gaughen's motion for partial summary judgment.

An appropriate order follows.

  S/ Christopher C. Conner  
CHRISTOPHER C. CONNER  
United States District Judge

Dated:	January 31, 2012

---

[11] The court would be remiss if it failed to observe that a Rule 50 motion may be warranted if the trial record fails to adduce clear and convincing evidence for a reasonable jury to conclude that Gaughen committed fraud.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **THOMAS W. GAUGHEN,** | : | CIVIL ACTION NO. 1:09-CV-2488 |
| **Plaintiff** | : | (Judge Conner) |
| v. | : | |
| **UNITED STATES OF AMERICA** | : | |
| **Defendant** | : | |

## **ORDER**

AND NOW, this 31st day of January, 2012, upon consideration of the motion (Doc. 47) for partial summary judgment filed by plaintiff Thomas W. Gaughen ("Gaughen"), and for the reasons set forth in the accompanying memorandum, it is hereby ORDERED that the motion for partial summary judgment is DENIED.

                                                         S/ Christopher C. Conner
                                                         CHRISTOPHER C. CONNER
                                                         United States District Judge